74 N.J. Super. 49 (1962)
180 A.2d 513
ANTONE S. DEMOURA, PLAINTIFF-APPELLANT,
v.
THE CITY OF NEWARK, THE NEW JERSEY DEPARTMENT OF CIVIL SERVICE, THE NEW JERSEY DEPARTMENT OF DIVISION OF LOCAL GOVERNMENT, LEO P. CARLIN, MICHAEL A. BONTEMPO, AARON A. HASKIN, JOHN ARTHUR, JAMES KELLY, VINCENT P. TORPPEY, MARIANO J. RINALDI, SAMUEL B. FINKELSTEIN, JOHN T. MAHONEY, WILLIAM J. GRIFFIN, JOHN SALERNO, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 9, 1962.
Decided April 19, 1962.
*51 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Antone S. Demoura argued the cause pro se.
Mr. Jacob M. Goldberg argued the cause for the municipal respondents, City of Newark, Carlin et al. (Mr. Vincent P. Torppey, Corporation Counsel, attorney; Mr. Joseph A. Ward, on the brief).
Mr. Sam Raffaelo, attorney for respondent Salerno, joined in the brief of the municipal respondents.
Mr. William L. Boyan, Deputy Attorney General, argued the cause for respondents Department of Civil Service and Division of Local Government.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff appeals from an order of the Law Division denying his motion for summary judgment and granting defendants'.

I.
The action was initiated by a complaint in lieu of prerogative writs, filed April 11, 1961. Its 53 counts presented a welter of generalities, vague and obscure, which failed fairly to apprise defendants of the claims they were *52 called upon to meet. See R.R. 4:8-1; Jardine Estates, Inc. v. Koppel, 24 N.J. 536, 542 (1957); Jersey City v. Hague, 18 N.J. 584, 610 (1955); Grobart v. Society for Establishing Useful Manufactures, 2 N.J. 136, 151-2 (1949); Ash v. Frazee, 37 N.J. Super. 542, 546 (App. Div. 1955). Although the complaint designates only 14 defendants in its caption, the body of the pleading implicates many dozens of other persons. The named defendants may be grouped into three categories: (1) the municipal defendants, including the City of Newark, Mayor Carlin, Municipal Council President Bontempo, Health and Welfare Director Haskin, Division of Inspection Superintendent Arthur (now deceased), Acting Chief Electrical Inspector Kelly, Corporation Counsel Torppey, Business Administrator Rinaldi, Personnel Officer Finkelstein, Budget Officer Mahoney and Finance Director Griffin; (2) the state defendants, Department of Civil Service and Division of Local Government; and (3) Salerno.
On motion of defendants the complaint was on June 27, 1961 dismissed as to all counts, with leave given plaintiff to file an amended complaint within 30 days with respect to the subject matter of counts 1 through 11, 32 and 37, without cost or prejudice. On that date plaintiff and all other parties defendant orally consented to the motion that had been made on behalf of the state defendants permitting the late filing of their answer. See R.R. 4:12-1(c) and (d).
Although no order was entered permitting the filing of an amended complaint, plaintiff nonetheless proceeded to serve (but not file) one, in six counts, along with a notice of motion for summary judgment as to counts 4, 5 and 6. Accompanying the motion was plaintiff's affidavit alleging that the facts contained in the complaint "are true to the best of my knowledge and belief." Such an allegation violated the requirement of R.R. 4:58-6, which provides that on a motion for summary judgment, supporting and opposing affidavits "shall be made on personal knowledge *53 and shall set forth only facts which are admissible in evidence and to which the affiant is competent to testify." See Ash v. Frazee, above, 37 N.J. Super., at page 547. Plaintiff's affidavit also alleged that he verily believed that defendants had no meritorious defense to the action. The trial court could well have refused to consider the affidavit.
The municipal defendants filed an answer to the amended complaint which raised the defense, among others, that plaintiff was not a taxpayer of the City of Newark and so not qualified to maintain the action. Accompanying the answer was a notice of motion for summary judgment and to settle the terms of an order to dismiss the original complaint. (Plaintiff had twice refused to consent to such an order prepared by counsel for the municipal defendants, and which would have carried out the determination made by the Law Division judge on June 27, 1961.) The notice of motion, like the defense set up in the answer, asked for the entry of summary judgment in favor of the municipal defendants on the ground that plaintiff was not a taxpayer of the city. The motion was accompanied by a supporting affidavit.
Defendant Salerno filed an answer to the amended complaint setting up the same defense as the municipal defendants had, and accompanied his answer with a notice of motion for summary judgment based on that ground, viz., that plaintiff was not a taxpayer of the city.
Plaintiff filed no affidavit in opposition to defendants' separate motions for summary judgment. Instead, he submitted two legal memoranda, the first in support of his own motion for summary judgment, and the second opposing defendants' motions. He also filed and served a notice of motion to settle the terms of an order permitting the filing of an amended complaint.
The several motions were noticed for hearing on September 15, 1961. On September 9 the municipal defendants filed a supplemental notice of motion to dismiss the amended complaint and for summary judgment in their favor, accompanied *54 by supporting affidavits of Finance Director Griffin, Budget Officer Mahoney, City Clerk Reichenstein, Health and Welfare Director Haskin, and one Richman, an electrical contractor mentioned in plaintiff's legal memorandum in support of his motion for summary judgment. Among the grounds advanced in defendants' supplemental notice were that plaintiff "does not appear by the amended complaint to be a person entitled to bring the said action or actions," the alleged actions were not factually established by the amended complaint, and the allegations as to each of the counts were vague, uncertain and indefinite, and lacked essential facts of which defendants were entitled to be apprised. Plaintiff filed no affidavit in opposition to the supplemental motion.
The amended complaint may be summarized as follows:
Count 1 alleged that the 1961 budget of Newark was "an improper and illegal document based on statements and financial computations not predicated on fact," and demanded that (1) the budget be set aside as null and void, (2) the city enjoined from further expenditure of any funds from the budget, and (3) the prosecutor instructed to apprehend such persons as the trial of the case, "shall prove to have committed an infringement of any penal statute of New Jersey." In this count, plaintiff alleges that he "has been a resident of Newark continuously since May 1939, and is a person entitled by right to maintain an action at law in matters of this nature."
Count 2 repeated count 1 and sought the same relief as to "preceding" annual city budgets "for and during such total period of previous time as is allowed by the applicable statute of limitations." The count contains the same general, uninformative allegation about the illegality of those budgets as was made in connection with the 1961 budget in count 1.
Count 3 repeated counts 1 and 2 and charged that "numerous officers, officials, and employees of the City of Newark holding office or position subject to the provisions *55 of Title 11 [Civil Service] are holding such offices or positions improperly and illegally and are likewise being paid improperly and illegally." Based on this indefinite and uninformative charge, plaintiff demanded that the city cease paying salaries or wages to officers and employees who, at the trial of the cause, were proved to have been illegally appointed or employed; that the court order restitution to the city by persons found to have violated N.J.S.A. 11:22-22, of that portion of monies paid as the court deemed "fit and equitable," reserving to plaintiff 5% of the monies so restored, as authorized by the statute; that defendant Department of Civil Service be ordered to comply with Title 11 (Civil Service), and that the prosecutor be instructed to apprehend such persons as were proved to have violated a penal statute.
Count 4 repeated counts 1, 2 and 3 and charged that improper and illegal appropriations and payments of salaries or wages were made, involving nine named persons "illegally" appointed to the position of Foreman, Parks and Trees, Bureau of Parks and Grounds, Department of Public Works, on and after June 27, 1957 (see, in this connection, Melchionne v. Newark, 60 N.J. Super. 104 (App. Div. 1960), affirmed 34 N.J. 16 (1961)), as well as all persons who were "improperly and illegally" appointed to the Civil Service positions of those nine employees. Plaintiff demanded that all persons responsible for violating Title 11 make restitution of that portion of salaries and wages paid as the court saw fit and equitable, reserving to plaintiff his finder's fee under N.J.S.A. 11:22-22; and that the prosecutor be instructed to proceed against the persons involved, under R.S. 11:26-1.
Count 5 repeated counts 1 and 2 and alleged that plaintiff is an electrician and an electrical contractor, and although the Newark Board of Electrical Examiners had been in operation since 1949 and received license fees from master electricians, it had been illegally constituted since its inception. The allegations in support of this charge go *56 no further than to state generally that members of the Board must be electrical contractors, and all city officials and employees must have a bona fide legal domicile within the city. Plaintiff demanded that the city be directed to dissolve the existing Board of Electrical Examiners and establish a properly constituted board; that the city issue him a valid license as master electrician; that it repay all master electrician's fees collected from him since 1949; and, finally, that the prosecutor proceed against all persons found to have violated the penal statutes.
Count 6, the final count, repeated counts 1, 2 and 3 and alleged that one Grasso, an investigator for the board of adjustment, was illegally holding that position because of successive temporary appointments, in violation of Title 11. The demands under this count were that Grasso be removed as investigator; that all official actions of the city predicated upon his investigations and reports be declared null and void; that all city personnel found responsible for violating Title 11 make restitution of such salary or wages paid Grasso as the court shall see fit and equitable, reserving plaintiff's 5% finder's fee, and, as in the case of the other counts, that the prosecutor proceed against all violators, under R.S. 11:26-1.
At the hearing of all motions held on September 15, 1961 Assignment Judge Waugh concluded that the amended complaint must be dismissed, "mainly" for the reason that plaintiff was not a taxpayer, and for the further reason that the charges laid in the complaint, as well as the respective demands for judgment, were too general. In the course of the hearing the trial judge addressed specific questions to plaintiff to determine whether he was a taxpayer, pointing out that he nowhere alleged that he was. Plaintiff admitted he did not pay taxes, and had not been assessed for taxes, but "I am subject and liable to personal taxes * * *." He insisted that he had standing to bring his action despite the fact that he did not pay real or personal property taxes.
*57 At the close of the hearing the court entered the order under appeal, dismissing plaintiff's motion for summary judgment and granting defendants'. At the same time, he entered the order dismissing the original complaint and granting plaintiff leave to amend counts 1 through 11, 32 and 37 of that complaint within 30 days. We may consider that order as, in effect, having been entered nunc pro tunc, as of June 27, 1961.
Plaintiff's main point on appeal is that the Law Division was not justified in dismissing his amended complaint, with costs and with prejudice, for the reasons stated by the trial judge. We find no merit whatsoever in the contention. Neither in his complaint, nor in the amended complaint, did plaintiff anywhere allege he was a taxpayer of the City of Newark. Despite the fact that the motions for summary judgment clearly put him on notice that his right to bring the action in lieu of prerogative writs was challenged on the ground that he was not a taxpayer, plaintiff never filed an affidavit or presented legal proof that he occupied that status. The general allegations of his legal memoranda in support of his own motion and opposing defendants' motions, do not supply the deficiency. Nor does anything set out in his brief support his claim of being a citizen-taxpayer.

II.
Plaintiff, at the outset of his brief, claims that he brought his action as a citizen and taxpayer under N.J.S. 2A:49-2 (sic  2A:49-1 was obviously meant). N.J.S. 2A:49-1 provides that if municipal funds are received, paid or disposed of without right, an action to recover the monies or for damages for such wrongful receiving or disposition, or both, may be maintained in any court of competent jurisdiction by ten freeholders of the municipality who have paid taxes on real estate in such municipality within one year. The action is to be brought in the name of the municipality, and for and on its behalf. Before bringing *58 such an action, the freeholders must file a bond with the municipal clerk, conditioned for the payment of costs, in such form and amount as the judge of the court may approve. Clearly, plaintiff is not entitled to bring such an action by himself and in his own name.
Before proceeding to see whether there is any statute which would support plaintiff's right to bring this in lieu action, we advert briefly to N.J.S.A. 11:22-22, under which plaintiff claims a 5% finder's fee in his demand for judgment under counts 3, 4 and 6. Under N.J.S.A. 11:22-20 no fiscal officer of a municipality operating under Title 11, subtitle 3, "Counties, Municipalities and School Districts," may draw, sign or issue a warrant on the disbursing officer for the payment of compensation to any person in the classified service unless the Civil Service chief examiner and secretary has approved and notified the appointing authority in writing that such person has been appointed or employed pursuant to law and the Civil Service rules. The responsibility for paying an employee illegally rests with the appointing authority. Under N.J.S.A. 11:22-22 any sums paid contrary to N.J.S.A. 11:22-20 may be recovered from the officer making the illegal appointment or from the officer signing or countersigning the warrant for the payment of such monies, "in a civil action in the County Court of any county, by a citizen resident thereof who is assessed for and liable to pay or, within one year before the commencement of the action, has paid a municipal, county or school district tax."
Plaintiff may not rely on N.J.S.A. 11:22-22 because he has not shown that any person who he claims was illegally paid compensation by Newark, and who is in the classified service, was not approved in his employment by the Civil Service chief examiner and secretary. Beyond that, any action he might have brought should have been brought in the Essex County Court. The statutory action is limited to that court. But more fundamental than all this is the fact that plaintiff is not a person assessed for *59 and liable to pay any local Newark tax within one year before the commencement of the action. Of this, more hereafter.
Were plaintiff a resident-taxpayer of Newark, he might possibly have founded his action upon N.J.S. 2A:15-18, which reads in significant part as follows:
"If the * * * governing body of a municipality fails to prosecute a claim or demand of the * * * municipality, any court in which an action on such claim or demand is cognizable may, upon terms, allow a taxpayer and resident of the * * * municipality to commence and prosecute an action upon the claim or demand in the name and on behalf of the * * * municipality, if in the opinion of the court the interests of the * * * municipality would be promoted thereby." (Italics ours)
Not only must a plaintiff relying upon this statute be a resident-taxpayer of the municipality, but it must appear that (1) the municipal governing body failed to prosecute the claim or demand of the municipality, and (2) the court in which the claim or demand is cognizable first determines that the interest of the municipality would be promoted thereby and consents to the bringing of the action. Ippolito v. Mayor, etc., of Hoboken, 60 N.J. Super. 477, 486 (App. Div. 1960). Plaintiff has nowhere alleged that the governing body of Newark failed to prosecute a legitimate claim or demand of the municipality. But that aside, the prerequisite of judicial consent to the bringing of the present action under N.J.S. 2A:15-18 is absent. The statute is not available to plaintiff.
N.J.S. 2A:66-6, which falls within that section of Title 2A relating to procedure in lieu of prerogative writs, and which deals specifically with proceedings to oust for usurping office or franchise (the former writ of quo warranto) provides:
"A proceeding in lieu of prerogative writ may also be instituted as of right against any person for usurping, intruding into or unlawfully holding or executing any office or franchise in this state, by any person who, under the former practice, would have the *60 requisite interest to exhibit an information in the nature of a quo warranto with the leave of court."
A proceeding in the nature of quo warranto, involving a municipal office or position, must under the former practice as well as now, be brought by a citizen and taxpayer of the city unless he himself is a claimant of the office. Goff v. Hunt, 6 N.J. 600, 605 (1951), citing McGuire v. De Muro, 98 N.J.L. 684 (Sup. Ct. 1923); New Jersey State Lodge  Fraternal Order of Police v. Aaron, 39 N.J. Super. 423, 429 (App. Div. 1956), certification denied 22 N.J. 138 (1956).
As was observed in the last-mentioned case, status such as would have supported one of the former types of prerogative writ proceedings remains a prerequisite for the bringing of an action in lieu of prerogative writs of corresponding function today. Musicians' Protective Union, etc. v. Jersey City, 4 N.J. Super. 147, 150 (App. Div. 1949); and see McGuire v. De Muro, above, 98 N.J.L., at page 687. A citizen-taxpayer may maintain an action to vindicate the public right, and this totally apart from considerations of pecuniary prejudice to the body politic. Koch v. Seaside Heights, 40 N.J. Super. 86, 93 (App. Div. 1956), affirmed o.b. 22 N.J. 218 (1956); Walker v. Stanhope, 23 N.J. 657, 662-3 (1957), and cases cited. For instances where the complaining party was required to be a citizen and taxpayer of the municipality, see Prezlak v. Padrone, 67 N.J. Super. 95, 97 (Law Div. 1961) (quo warranto); Jamouneau v. Murphy, 130 N.J.L. 498, 502 (Sup. Ct. 1943), affirmed o.b. 131 N.J.L. 39 (E. & A. 1943); Ferry v. Williams, 41 N.J.L. 332, 339 (Sup. Ct. 1879) and Hugg v. Camden, 39 N.J.L. 620, 624 (Sup. Ct. 1877) (all mandamus); Simmons v. Mayor, etc., Wenonah, 6 N.J. Misc. 902, 903, 143 A. 73 (Sup. Ct. 1928); Oliver v. Mayor, etc., of Jersey City, 63 N.J.L. 96, 98 (Sup. Ct. 1899), reversed on other grounds 63 N.J.L. 634 (E. & A. 1899) (certiorari).
*61 Considering the present proceedings as one, in part, in lieu of the former prerogative writ of quo warranto, we observe in passing that we have not considered the question, suggested in Goff v. Hunt, above, 6 N.J., at page 605, as to whether leave of court was required to bring that phase of the action.
The standing of a taxpayer to bring an action seeking to remedy wrongful acts of public officials was reviewed in Haines v. Burlington County Bridge Comm., 1 N.J. Super. 163, 170-173 (App. Div. 1949). It is clear that in certain circumstances involving substantial departure from the legalities by public bodies or officials in matters of general public concern, relief may be sought by a citizen even if he is not a taxpayer. See, for example, Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433, 476 (1952), modifying 10 N.J. Super. 545 (Ch. Div. 1950), certiorari denied 344 U.S. 838, 72 S.Ct. 25, 97 L.Ed. 652 (1952), rehearing denied 344 U.S. 888, 73 S.Ct. 181, 97 L.Ed. 687 (1952); New Jersey State Lodge  Fraternal Order of Police v. Aaron, above, 39 N.J. Super., at page 429. But it is obvious even from a casual reading of the amended complaint that the circumstances of this case do not remotely correspond to the wrongdoing uncovered in the Burlington-Bristol Bridge case. We are persuaded that this action is not brought out of any concern for the general public, but is a purely private strike action  the continuance of a course of litigation between plaintiff and Salerno and, latterly, plaintiff and the city. Our appendix provides the background. The original complaint was a scattergun attack, spread over a large area of municipal activities. The amended complaint, although more circumscribed, still bears the characteristics of the same shotgun approach.
Plaintiff in his brief recognizes the authority of some of the cases we have cited, but insists that he is a taxpayer of Newark in the sense that he is a person "chargeable with a tax"  one who is "subject to and liable for the payment of any and all duly authorized taxes," citing law dictionary *62 definitions and Words and Phrases. He mentions his one-time ownership of property on 19th Street, Newark. Although this matter is not presented as a matter of legal proof, either by way of affidavit or otherwise, we shall briefly deal with plaintiff's representation. In 1950 he and his wife bought the 19th Street home as owners by the entirety. In 1957 the two conveyed plaintiff's right, title and interest to the wife alone. Plaintiff filed a petition in bankruptcy in June 1959. By court order dated October 5, 1960, the 1957 transfer of his right, title and interest in and to the marital dwelling was set aside and ordered reconveyed to plaintiff. At that moment, any right, title and interest which plaintiff might have had in the property vested in his trustee. Pursuant to court authority granted, the trustee on December 5, 1960 sold plaintiff's interest in the 19th Street property to one Ceil Salerno for $360.
Plaintiff would appear to contend that since he and his wife owned the property between October 5 and December 5, 1960, a period of two months, he was a taxpayer. The assessment date for real property is, of course, October 1 of each year. N.J.S.A. 54:4-23. It is clear that the property was never assessed against plaintiff. It is equally clear that when the 1957 conveyance was set aside and the property reconveyed, the trustee in bankruptcy became seized of plaintiff's interest. Plaintiff admits he never paid any taxes during 1960 or 1961, either on real or on personal property. His complaint, as indicated at the beginning of the opinion, was filed April 11, 1961.
Plaintiff further contends that the fact that he may be liable to an assessment and the payment of taxes is enough to make him out a taxpayer. He has nowhere shown that he owns any property subject to local taxation.
Plaintiff also argues that his payment of gasoline and cigarette taxes to the State is sufficient to spell out his status as a taxpayer. Here, again, there is no legal proof that he pays or has paid taxes on gasoline or cigarettes. But disregarding that, it is not enough that a person may *63 pay taxes to the State; he must be a taxpayer of the municipality involved. Cf. Koons v. Atlantic City, 134 N.J.L. 329, 338 (Sup. Ct. 1946), affirmed o.b. 135 N.J.L. 204 (E. & A. 1947); Simmons v. Mayor, etc., of Wenonah, above, 6 N.J. Misc., at page 903; Band's Refuse Removal, Inc. v. Fair Lawn, 62 N.J. Super. 522, 539 (App. Div. 1960).

III.
Counts 1, 2 and 3 were properly dismissed, not only because plaintiff was not a taxpayer of Newark but because they were so general and vague that a dismissal was in order. It should be recalled that plaintiff's original complaint was so diffuse and general that the court dismissed it out of hand but permitted counts 1 through 11, 32 and 37, to be amended. Despite the fact that he knew of the fatal weakness of the original complaint and had adequate time to compose a proper pleading, his amended complaint is as defective as the original one.
Count 4 of the amended complaint is more specific  but only on a relative basis  since it was directed at what is claimed to have been the improper appropriation of monies and payment of salaries or wages to nine particular employees in the Department of Public Works, Bureau of Parks and Grounds, on and after June 27, 1957, as well as to those who took their place in the order of appointment and transfer. The demand for judgment, however, was cast in general terms  e.g., that all persons responsible for any violation of Title 11 be required to make restitution, etc. Until the Supreme Court decision came down in Melchionne v. Newark, 34 N.J. 16 (1961), the nine men held their employments de facto. The affidavit supporting the municipal defendants' supplemental notice of motion to dismiss and for summary judgment established the fact that appropriations and payrolls had been regularly approved, and wages and salaries made in accordance with *64 law. The count was properly dismissed, not only for this reason, but because plaintiff was not a Newark taxpayer and the demand for judgment imprecise.
Count 5 also suffers from generality and vagueness. Plaintiff did not indicate just why the Board of Electrical Examiners had, since its inception in 1949, been illegally constituted and therefore could not possess or exercise legal authority. Plaintiff asked that a valid master electrician's license be issued to him, and that fees he had paid be restored to him, in addition to demanding that the Board be dissolved and a legal one established. The count was properly dismissed for the reasons given by the court, in addition to the fact that plaintiff was, at the least, the holder of a license issued by a de facto board (if he be correct in his assertion that it was illegally constituted) and therefore suffered no harm. The fees he paid were for the license issued and regularly renewed, under which plaintiff carried on his electrician's business.
Thus, plaintiff is left with only count 6, dismissed because he was not a taxpayer, and the pleading too general. Although none of the parties has referred us to the statute, N.J.S.A. 11:25-4 provides:
"When a board or body or public officer, official or employee of a * * * municipality * * *, operating under this subtitle, violates any of the provisions of this subtitle in selecting persons for employment, or in the designation of any employee for appointment, or in the suspension or removal of employees from office, a citizen of this State may have a summary review of such illegal or unlawful action, by a proceeding in lieu of prerogative writ." (Emphasis added)
Count 6 is probably the most specific of all the counts in the complaint. It alleges that Grasso, who held the classified service job of laborer in the Newark Water Department, received a temporary appointment, pending open competitive examination, as board of adjustment investigator on March 17, 1955; that he took the open competitive examination for that position in November 1957 and *65 was officially notified on April 17 following that he had failed to pass the examination; and that despite such failure his temporary position as investigator has been continued to date. Plaintiff charged that Grasso's successive temporary appointments and continued employment as investigator violated Title 11, and he was occupying the position improperly and illegally. As noted, the demand for judgment was that Grasso be removed as investigator, all official actions predicated upon his investigations and reports be declared void, all persons employed by Newark who were responsible for any violations of Title 11 be ordered to reimburse the city for such portion of monies paid to Grasso as the court saw fit and equitable, preserving to plaintiff the monies to which he was entitled under N.J.S.A. 11:22-22, and the prosecutor be instructed to proceed against all persons involved in the violations, pursuant to R.S. 11:26-1. We have above adverted to the fact that plaintiff could not proceed in the Law Division under N.J.S.A. 11:22-22. It will also be observed that the demand for judgment is cast in very general terms.
We have already remarked that plaintiff filed no affidavit in support of the allegations of count 6, and that his legal memoranda do not supply the deficiency in legal proof. The affidavit of Personnel Officer Finkelstein read in support of defendants' supplemental motion for summary judgment, and what was said at the hearing before Judge Waugh, disclosed that Grasso was continued in necessary employment on a temporary basis awaiting the promulgation and certification of an employment list of three qualified persons who would accept the employment if offered. See N.J.S.A. 11:22-16. His temporary employment would terminate upon such certification. His salary, like that of other officers and employees, was based upon salary ordinances and payments made upon payrolls approved by the Civil Service Commission. No employment list had been promulgated and certified as of the date of the hearing.
*66 Under R.S. 11:22-14, the head of a municipal department operating under Civil Service is authorized, in case of emergency, to employ temporarily a person to carry out the work of the department, subject to the subsequent approval of the Civil Service Commission. R.S. 11:22-15 provides that no such temporary employment shall continue for longer than two months, nor shall successive temporary appointments be made to the same position. However, if the head of the department in which the temporary appointment has been made presents a request prior to the termination of the two-month period, showing that the emergency requiring the temporary appointment still exists, the Commission may permit an extension of not exceeding two months. Thus, the Commission is authorized to permit successive two-month periods of temporary emergency employment when the department head shows that an emergency requiring such employment still exists.
Plaintiff contends that R.S. 11:22-15 authorizes only a single two-month extension. If such an interpretation were correct, no appointing authority could continue a temporary appointment in the absence of a list of three persons who qualified for the position. Such an interpretation would interfere with the orderly administration of local government. The difference between the mandatory four-month limitation for provisional appointments in the State Civil Service (R.S. 11:10-3) and the less restrictive language of R.S. 11:22-15, reenforces such an analysis. Plaintiff's own "Legal Memorandum for Summary Judgment" shows that the Civil Service Commission has substantially complied with R.S. 11:22-15.
Had there been an eligible applicant, certified by the Commission, who was seeking Grasso's position pending a new examination to establish a list of three, there might be some force in plaintiff's argument. However, such is not the case he presents here. It need hardly be stated that plaintiff does not seek Grasso's position for himself; *67 his papers do not indicate any ambition or desire to be considered for that position.

IV.
It remains to deal with the position of the state defendants, the Department of Civil Service and the Division of Local Government. As noted at the beginning of this opinion, they did not file a timely answer to the original complaint; however, on June 27, 1961, when the city defendants moved before the Law Division judge to dismiss the complaint, all parties orally consented to a motion on behalf of the state defendants to permit the late filing of their answer. Although the deputy attorney general sent a form of order permitting such filing, together with a covering letter, to the trial judge, the order was overlooked during the summer vacation and never entered. While the deputy attorney general awaited the return of the order from the judge before filing his answer, plaintiff served his amended complaint. However, he never filed that pleading; it is not in the Superior Court Clerk's file, nor is it entered on the docket. We have overlooked this critical omission in considering the merits.
The answer of the state defendants should now be filed as of June 27, 1961.
The city defendants and Salerno answered the amended complaint; the state defendants did not. Without an order permitting plaintiff to file an amended pleading, or the filing of the amended complaint itself, we would not be doing substantial justice were we now to tax the state defendants with failure to file an answer to the amended complaint.
While we are on the subject, it should be observed that count 2 of the amended complaint outlined above, introduces matter outside the scope of the original complaint. Count 4 repeats count 39 of the original pleading and was not one of the counts the trial judge indicated plaintiff would be permitted to amend. The remaining counts are *68 reworkings of the counts which the court did permit him to amend, and we may consider the answer of the state defendants as fully meeting them.
Only one count of the amended complaint expressly demands relief from either of the state defendants  count 3, paragraph (C), which demanded that defendant Civil Service Department "be ordered henceforth to comply specifically and exactly" with the provisions of Title 11. Count 3 lays no unlawful action or inaction at the door of the Department. Its only pertinent allegation is that contained in paragraph 3, which alleges that the Department has responsibility for the supervision of employment and payment of salaries in the classified service. However, the amended complaint does not charge that the Department is not fully performing its duty under the statute. Accordingly, a demand for relief against it was improper under count 3. This being so, the amended complaint is left without any demand for relief against the state defendants.
R.R. 4:34 permits parties to be dropped on the trial court's own motion at any stage of the action and on such terms as are just. The state defendants could, therefore, very well be dropped from the action on our own motion in the exercise of our original jurisdiction.
Be all this as it may, the fact still remains that the amended complaint was properly dismissible as against all parties defendant for the reasons we have set out in Parts II and III of this opinion.

V.
There being no palpable issue of fact to be decided. defendants' motion for summary judgment was properly granted, and the Law Division judgment must be affirmed.

APPENDIX.
Docket C-2409-53. Salerno brought an action against Demoura for an accounting arising from a joint electrical *69 contracting venture extending from the latter part of 1951 to July 20, 1954. Judgment was entered in favor of Salerno for $133,450.80 and costs on March 24, 1959.
Docket L-6997-57. Salerno sued Demoura for $250,000 compensatory and $250,000 punitive damages, alleging that because of the above action for an accounting, Demoura conceived and carried out a malicious plan to injure him in his business and to have him removed as a member of the Newark Board of Electrical Examiners, on which he served from July 1949 to December 1954. The action was dismissed on April 7, 1959, without prejudice.
Docket C-1969-58. Salerno brought an action against Demoura and his wife, setting out the judgment he had recovered in the accounting action and charging that defendants, who had in 1950 acquired a property on South 19th Street, Newark, had conveyed it to the wife alone in 1957 to defraud creditors. Plaintiff also claimed that the monies used to acquire the property were Demoura's. He demanded judgment to have Demoura declared the owner of the property, and the conveyance to the wife set aside. An amended complaint set up a second cause of action to have the wife declared trustee of the property for her husband. By judgment dated October 5, 1960 the conveyance to the wife was set aside as in fraud of creditors, and the court ordered a reconveyance of Demoura's right, title and interest in the property.
Docket A-878-59, Newark v. Department of Civil Service and Demoura. This appeal involved Demoura's suspension and removal as an electrical inspector in the Newark Health and Welfare Department, a position to which he had been appointed in March 1957. Demoura had pleaded nolo contendere to an indictment charging him with income tax evasion, and after a full hearing the Health and Welfare Director removed him from his position. On appeal to the Civil Service Department, the penalty was reduced to a six-month suspension from the date of the original suspension, October 27, 1959. The facts and issues in this appeal *70 may be found in our opinion filed July 3, 1961, 68 N.J. Super. 416. We reversed and remanded for appropriate proceedings before the local appointing authority pursuant to the provisions of the Faulkner Act, N.J.S.A. 40:69A-1 et seq.
Docket L-13016-60. This is the present case.
Docket L-755-61. Demoura brought an action against the City of Newark and City Clerk Reichenstein, based on his appointment as electrical inspector and his suspension and removal from that position  the matter implicated in Docket A-878-59, above. Plaintiff demanded that Newark be required to reinstate him as electrical inspector as of October 27, 1959, the date of his suspension. His demand on the City Clerk for back salary from that date had not been honored, and he demanded judgment against defendants for back salary. Defendants then moved for summary judgment because the action was premature, no right of action for reinstatement or back salary having accrued, and the proceeding before the Health and Welfare Director still pending. Plaintiff also moved for summary judgment. The latter motion was denied, the court holding that the Appellate Division reversal and remand did not have the effect plaintiff claimed. Defendants' motion was held, and the action stayed pending proceedings before the local appointing authority.